**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                :
D.G., et al.,                   :   CIVIL ACTION NO. 07-4578 (MLC)
                                :
      Plaintiffs,               :   MEMORANDUM OPINION
                                :   FILED APRIL 18, 2008
      v.                        :
                                :
SOMERSET HILLS SCHOOL           :
DISTRICT, et al.,               :
                                :
      Defendants.               :
_____ :
```

**COOPER, District Judge**

    **APPEARANCES**

        Rebecca Kay Spar
        Cole, Schotz, Meisel, Forman & Leonard, Esqs.
        Hackensack, New Jersey
        Attorney for Plaintiffs

        Rita F. Barone
        Purcell, Ries, Shannon, Mulcahy & O'Neil, Esqs.
        Bedminster, New Jersey
        Attorney for Defendants Somerset Hills School District,
        Richard Charwin, Anne Connor, Sarah Dundas, John Grund, and
        Peter Miller

<strong>INTRODUCTION</strong>

    Plaintiff D.G. asserts that he was a student in the Somerset
Hills School District (the "District") and was eligible for
services and protection under the Individuals with Disabilities
Education Act, 20 U.S.C. § 1400 <u>et seq.</u> ("IDEA").  (Dkt. entry
no. 1, Compl., at ¶¶ 3, 9.)  Plaintiffs C.G. and T.G. (together
with D.G., the "Plaintiffs") are the parents of D.G.  (<u>Id.</u> at ¶
8.)  Plaintiffs commenced this action against the District and
the following employees of Bernards High School, the District

high school D.G. attended, at all times relevant to the complaint: (1) Lynn J. Caravello ("Caravello"), the principal, (2) Richard Charwin ("Charwin"), the Director of Guidance, (3) Anne Connor ("Connor"), the nurse, (4) Sarah Dundas ("Dundas"), the Guidance Counselor, (5) John Grund ("Grund"), the Student Assistance Counselor, (6) Peter Miller ("Miller"), the Superintendent, and (7) Richard Palazzi ("Palazzi"), the Assistant Principal.  (Id. at ¶¶ 9-16.)

Plaintiffs contend, inter alia, that (1) the District's actions and inactions violated D.G.'s rights under the IDEA and "New Jersey Statutes" (count 1), (2) the "Defendant District's refusal to make accommodations for D.G., including but not limited to, refusing to modify its attendance policy also constitutes disability-based discrimination prohibited by Section 504" of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (count 2), (3) the defendants' conduct violated Plaintiffs' rights to procedural due process under 42 U.S.C. § ("Section") 1983 and the Fourteenth Amendment to the United States Constitution (count 3), and (4) the District deprived D.G. of his rights under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 et seq. ("NJLAD") (count 4).  (See id. at ¶¶ 19-102.)  The District, Charwin, Connor, Dundas, Grund, and Miller (collectively, the "Moving Defendants") move to dismiss the complaint insofar as asserted against them pursuant to Federal Rules of Civil

Procedure ("Rules") 12(b)(1) and 12(b)(6).  (Dkt. entry no. 4.)[1]
Plaintiffs oppose the motion.  (Dkt. entry no. 6.)  For the
reasons stated herein, the Court will (1) grant the motion with
respect to the (a) IDEA claim and Fourteenth Amendment claim
(count 1 and count 3) insofar as such claims are asserted against
the Moving Defendants and (b) Rehabilitation Act claim (count 2)
insofar as such claim is asserted against Charwin, Connor,
Dundas, Grund, and Miller, the individual Moving Defendants, and
(2) deny the motion with respect to the (a) Rehabilitation Act
claim (count 2) insofar as such claim is asserted against the
District and (b) NJLAD claim (count 4) insofar as such claim is
asserted against the Moving Defendants.

**BACKGROUND**

D.G. attended schools within the District from kindergarten
through twelfth grade.  (Compl., at ¶ 20.)  For purposes of
addressing this motion only, the Court will accept the following
allegations contained in the complaint as true.

D.G.'s school records indicate that as early as fourth grade
he was often "down" and focused on things he did not like about
himself rather than his strengths.  (Id. at ¶ 23.)  In sixth

---

[1] Defendants Caravello and Palazzi are not parties to the
motion to dismiss and have not appeared.  The Court notes that
the summons was issued on September 26, 2007.  (Dkt. entry no.
2.)  The summons was served on (1) the District, Miller, Grund,
Connor, and Dundas on October 2, 2007, (2) Charwin on October 4,
2007, and (3) Caravello on November 24, 2007.  (Dkt. entry nos.
8-13, 16.)  However, the summons has not been returned with
respect to Palazzi.

grade, D.G. demonstrated behavioral issues and signs of depression, including suicidal thoughts.  (Id. at ¶ 25.)  During seventh grade and eighth grade, D.G.'s emotional and behavioral limitations continued and he committed "defiant and aggressive actions."  (Id. at ¶ 27.)  District personnel informed C.G., D.G.'s mother, that he had threatened to kill himself at least twice.  (Id. at ¶ 28.)  District personnel did not refer D.G. for any type of evaluation from fourth through eighth grades.  (See id. at ¶¶ 26, 29, 32.)  However, the principal of D.G.'s elementary school "told D.G.'s parents they must have him privately evaluated and threatened to remove D.G. from school if his suicidal comments persisted."  (Id. at ¶ 30.)

D.G.'s depression problems continued when he entered Bernards High School.  D.G. spent nearly eight hours in an emergency room in September 2003 while his parents unsuccessfully attempted to secure a place for him at an in-patient psychiatric facility.  (Id. at ¶ 34.)  The following day, C.G. informed Caravello, Connor, and Grund about her son's increased depression and her concerns about his well-being.  (Id. at ¶ 35.)  According to Plaintiffs, C.G. "was not offered any assistance and the [d]efendants still did not identify and/or refer D.G. for an evaluation through the school district."  (Id. at ¶ 36.)

D.G. was given an in-school suspension after he jumped off the high school bleachers in October 2003.  (Id. at ¶¶ 37-39.)

Thereafter, on January 6, 2004, D.G. was admitted to a hospital and diagnosed with major depression, alcohol abuse, and cannabis abuse.  (<u>Id.</u> at ¶ 41.)  D.G. was admitted to Sunrise House in April 2004 for four weeks, and Touchstone Hall in September 2004 for four months.  (<u>Id.</u> at ¶ 45.)  Certain defendants were informed about D.G.'s hospitalization and his inability to attend school.  (<u>Id.</u> at ¶¶ 42, 46.)  Grund told C.G. that District personnel would contact D.G.'s counselors while he was in the treatment facilities to provide course syllabi and homework, but Plaintiffs assert, upon information and belief, that no District personnel ever contacted D.G.'s counselors during the relevant time period.  (<u>Id.</u> at ¶¶ 48-49.)[2]  Plaintiffs further assert that the defendants did not offer any services to support D.G.'s transition back into Bernards High School.  (<u>Id.</u> at ¶ 51.)

C.G. repeatedly asked Dundas, Connor, Caravello, and Grund to evaluate D.G. for eligibility for special education services, but no meeting was ever scheduled to discuss C.G.'s requests and she was not given any written response indicating why her evaluation requests had been denied.  (<u>Id.</u> at ¶¶ 53-55.)  Dundas told C.G. that D.G. had not been evaluated for eligibility for special education services because "he can do the work."  (<u>Id.</u> at ¶ 64.)  Accordingly, despite C.G.'s repeated requests, D.G. was

---

[2] Plaintiffs concede that Dundas did provide C.G. with D.G.'s history, English and math text books, but state that such books were useless without corresponding syllabi.  (<u>Id.</u> at ¶ 50.)

not evaluated or provided with services to accommodate his depression and he continued to have difficulty in school.  (Id. at ¶¶ 56, 66.)

Caravello told C.G., on May 17, 2006, that D.G. would not be permitted to graduate in June with his classmates because he had missed too many class sessions, and thus, would not receive credit for certain classes.  (Id. at ¶ 67.)  D.G. was also not permitted to walk in the graduation procession or attend the Senior Class Breakfast.  (Id. at ¶ 71.)  C.G. contacted Miller and the president of the Somerset Hills Board of Education on behalf of D.G. but both refused to intervene.  (Id. at ¶ 73.)  D.G. and C.G. filed a due process request with the Office of Administrative Law ("OAL") in July 2006 asserting that D.G. should be awarded a high school diploma.  (Id. at ¶ 75.)  However, because the District contended that the OAL lacked the authority to issue a high school diploma, C.G. and D.G. withdrew their petition.  (Id. at ¶¶ 76-77.)  D.G. took the G.E.D. examination in October 2006 and received a diploma from the New Jersey Department of Education on November 7, 2006.  (Id. at ¶ 78.)  Nevertheless, Plaintiffs commenced this action on September 25, 2007 seeking, inter alia, compensatory and consequential damages from the District and certain District personnel, who were employees of Bernards High School at times relevant to the complaint.  (See id.)

**DISCUSSION**

I.   **Legal Standards Governing a Motion to Dismiss**

A.   **Rule 12(b)(1)**

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1) at any time. Fed.R.Civ.P. 12(b)(1); Iwanowa v. Ford Motor Co., 67 F.Supp.2d 424, 437-38 (D.N.J. 1999).  The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction.  Id. at 438.  Under this standard, the Court assumes that the allegations in the complaint are true, and may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction.  Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 75 (3d Cir. 1983); Iwanowa, 67 F.Supp.2d at 438.

A defendant can also attack subject matter jurisdiction by factually challenging the jurisdictional allegations set forth in the complaint.  Iwanowa, 67 F.Supp.2d at 438.  Under this standard, "no presumptive truthfulness attaches to plaintiff's allegations and the existence of disputed material facts will not preclude the Court from evaluating for itself the merits of jurisdiction claims."  Pashun v. Modero, No. 92-3620, 1993 U.S. Dist. LEXIS 7147, at *6 (D.N.J. May 26, 1993).  The Court may

7

consider affidavits, depositions, and testimony to resolve factual issues and is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. Iwanowa, 67 F.Supp.2d at 438.  The defendant may factually attack subject matter jurisdiction at any stage in the litigation, including before the answer has been filed.  Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990) (explaining that a defendant may factually attack subject matter jurisdiction before filing an answer); see Pashun, 1993 U.S. Dist. LEXIS 7147, at *6.

**B.   Rule 12(b)(6)**

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6). On a motion to dismiss, the Court generally must accept as true all of the factual allegations in the complaint, and must draw all reasonable inferences in favor of the plaintiff.  Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 134 (3d Cir. 2004); Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001).  However, the Court need not credit bald assertions or legal conclusions alleged in the complaint.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption

8

that all the allegations in the complaint are true (even if
doubtful in fact)". <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955,
1965 (2007).

The Court, when considering a motion to dismiss, may
generally not "consider matters extraneous to the pleadings." <u>In</u>
<u>re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d at 1426.
However, if the Court exercises discretion and permits a party to
present matters outside the pleadings, the Court must (1) convert
the motion to dismiss into one for summary judgment, and (2)
allow the parties a reasonable opportunity to present all
material pertinent to such a motion under Rule 56.   <u>See</u>
Fed.R.Civ.P. 12(b).  An exception to this general rule is that
the Court may consider (1) exhibits attached to the complaint,
(2) matters of public record, and (3) all documents that are
integral to or explicitly relied upon in the complaint without
converting the motion to dismiss into one for summary judgment.
<u>Angstadt v. Midd-West Sch. Dis.</u>, 377 F.3d 338, 342 (3d Cir. 2004).

## II.  Motion to Dismiss Standards Applied Here

### A.   IDEA Claim

Plaintiffs assert that the District violated D.G.'s rights
under the IDEA.  (Compl., at ¶ 79.)  Plaintiffs emphasize that
the District's failure to evaluate D.G. and provide him with
educational accommodations and services, <u>inter alia</u>, (1)
exacerbated his depression, (2) caused him to lose self-esteem,

(3) "impeded him in acquiring necessary training and education",
(4) caused him to suffer from the stigma of not graduating with
his peers and receiving his diploma, and (5) delayed his plans to
attend college and resulted in lost earnings.  (Id. at ¶ 80.)
Further, Plaintiffs assert that C.G. and T.G. suffered from
emotional and mental distress, monetary losses, and the loss of
enjoyment of their son, and were deprived of their right to
participate in important decisions regarding their son.  (Id. at
¶¶ 82-83.)  Thus, Plaintiffs seek compensatory and consequential
damages from the District, as well as attorneys fees, costs, and
such other relief as the Court deems just and proper.  (Id. at
Wherefore Cl. following ¶ 83.)

### 1.   Statute of Limitations

The Moving Defendants argue that Plaintiffs' IDEA claim
should be dismissed because they failed to bring such claim
within the applicable two-year statute of limitations period.
(Moving Defs. Br., at 2-5.)  The IDEA provides:

> A parent or agency shall request an impartial due
> process hearing within 2 years of the date the parent
> or agency knew or should have known about the alleged
> action that forms the basis of the complaint, or, if
> the State has an explicit time limitation for
> requesting such a hearing . . ., in such time as the
> State law allows.

20 U.S.C. § 1415(f)(3)(C).  This statute of limitations does not
apply, however, it the parent was prevented from requesting an
impartial due process hearing because the local educational

10

agency (1) misrepresented that it had solved the problem forming the basis of the complaint, or (2) withheld information from the parent that it was required to provide.  20 U.S.C. § 1415(f)(3)(D).  C.G. repeatedly requested that D.G. be evaluated for eligibility for special education services.  When District personnel denied such evaluation requests, they were required to provide his parents with written notice explaining why they refused to evaluate him, stating that the parents have procedural safeguards available to them, including filing a complaint and requesting an impartial due process hearing, and describing the means by which the parents could obtain a description of such procedural safeguards.  See 20 U.S.C. §§ 1415(b)(3)(B), (c)(1)(A)-(C).  Thus, because the District withheld information it was required to provide to D.G.'s parents, the IDEA's two-year statute of limitations does not apply here.  See 20 U.S.C. § 1415(f)(3)(D).

Plaintiffs' IDEA claim also is not barred by the above two-year statute of limitations period under the continuing violations doctrine.  "The continuing violations doctrine is an equitable exception to a strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time."  Foster v. Morris, 208 Fed.Appx. 174, 177 (3d Cir. 2006).  The doctrine applies here because (1) the same type of discrimination

underlies the defendants' alleged misconduct and thus the actions
and omissions at issue are all connected, (2) the conduct
underlying the complaint, particularly the District's refusal to
evaluate D.G., recurred and did not constitute isolated
incidents, and (3) C.G. continuously communicated with the
District and updated its personnel on D.G.'s status, and thus,
each separate alleged refusal to evaluate D.G. and provide
education services did not have a high degree of permanence.  See
Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001).
Accordingly, because each of the defendants' alleged actions and
omissions were part of a continuing practice and the last act
evidencing the continuing practice occurred in June 2006, a date
within the IDEA's two-year statute of limitations period,
Plaintiffs timely asserted their IDEA claim.  Id.

### 2.   Substantive Aspects of the IDEA claim

The IDEA imposes a "child find" duty, which requires that
all disabled children residing in a particular state, who are in
need of special education and related services, are identified,
located, and evaluated, and a method is developed to determine
whether disabled children are currently receiving needed special
education and related services.  20 U.S.C. § 1412(a)(3)(A).
Moreover, all state and local educational agencies that receive
assistance under the IDEA must maintain procedures to ensure that
disabled children and their parents "are guaranteed procedural

12

safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a). Such procedural safeguards must include, inter alia, (1) written prior notice to parents when a local educational agency refuses to initiate the evaluation or educational placement of a disabled child, and (2) the opportunity to present a complaint regarding the evaluation or educational placement of a disabled child. 20 U.S.C. §§ 1415(b)(3)(B), (b)(6)(A)-(B). When a complaint pertaining to the evaluation or educational placement of a disabled child is received, the child's parents or the local educational agency have an opportunity for an impartial due process hearing conducted by either the state or local educational agency. 20 U.S.C. § 1415(f)(1)(A). If the hearing is conducted by a local education agency, however, any aggrieved party may appeal the findings and decision to the state educational agency. 20 U.S.C. § 1415(g)(1).

A party aggrieved by the findings and decision made by a state or local educational agency in connection with an impartial due process hearing, may commence an action in any state or district court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2)(A); see 20 U.S.C. § 1415(f). Such aggrieved party "shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation . . . in such time as the State law

13

allows."  20 U.S.C. § 1415(i)(2)(B).  All administrative
procedures provided under the IDEA must be exhausted before an
aggrieved party may file a civil action "seeking relief that is
also available" under the IDEA, even if such action asserts
violations of other laws such as the Americans with Disabilities
Act, Rehabilitation Act, or United States Constitution.  See 20
U.S.C. § 1415(l).  "Therefore, to the extent that any claim seeks
relief that is 'available' under the IDEA, the IDEA's
administrative remedies must be exhausted before such action is
brought."  L.R. v. Manheim Twp. Sch. Dist., No. 05-1283, 2008
U.S. Dist. LEXIS 23966, at *14 (E.D. Pa. March 26, 2008).

     Plaintiffs, as noted above, seek compensatory and
consequential damages with respect to their IDEA claim.  The IDEA
does not expressly state that monetary relief is an "available"
remedy.  However, in a civil action commenced in state or
district court by an aggrieved party, the IDEA permits the court
to "grant such relief as the court determines is appropriate."
20 U.S.C. § 1415(i)(2)(C).

     The Third Circuit, in W.B. v. Matula, concluded that an
action may be maintained under Section 1983 for violations of the
IDEA, and "an aggrieved parent or disabled child is not barred
from seeking monetary damages in such an action."  67 F.3d 484,
495 (3d Cir. 1995), overruled in part by A.W. v. Jersey City Pub.
Sch., 486 F.3d 791 (3d Cir. 2007).  The Third Circuit noted that

14

a district court may choose to order educational services rather
than compensatory damages in such actions, but then stated, "we
do not preclude the awarding of monetary damages and leave to the
district court in the first instance the task of fashioning
appropriate relief."  Id.  Recently, however, the Third Circuit,
in A.W., overruled Matula in part and concluded that "Congress
did not intend [Section] 1983 to be available to remedy
violations of the IDEA."  486 F.3d at 803.  In reaching this
conclusion, the court noted that the IDEA provisions discussed
above create a private means of redress, and thus, Section 1983
is not available to remedy violations of rights created by the
IDEA absent a textual indication that the statutory remedy was
intended to complement, rather than supplant Section 1983.  Id.
at 802.  The Third Circuit then determined that section 1415(l)
of the IDEA was intended to supplant Section 1983.  Id. at 803.

     Although the Third Circuit held that Section 1983 could not
be used to assert violations of rights under the IDEA, the court
did not address its statements in Matula regarding the
availability of monetary damages under the IDEA.  Therefore, it
is unclear under Third Circuit case law whether "appropriate"
relief under the IDEA includes compensatory and consequential
damages.  Nevertheless, other circuit courts have determined that
monetary damages are not available under the IDEA.  See, e.g.,
Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 246-47 (2d

Cir. 2008) (citing <u>Polera v. Bd. of Educ.</u>, 288 F.3d 478, 483-86 (2d Cir. 2002) and stating that compensatory and punitive damages are not available under the IDEA); <u>M.H. v. Lemahieu</u>, 513 F.3d 922, 929 (9th Cir. 2008) (citing Ninth Circuit cases and noting that ordinarily monetary damages are not available under the IDEA); <u>Diaz-Fonseca v. Puerto Rico</u>, 451 F.3d 13, 34 (1st Cir. 2006) (noting that compensatory damages are not available under the IDEA and determining that no monetary relief, including tuition reimbursement and compensatory education, is available against individual school officials under the IDEA); <u>Ortega v. Bibb County Sch. Dist.</u>, 397 F.3d 1321, 1325-26 (11th Cir. 2005) (citing cases from other circuits and then concluding that the IDEA is not a "tort-like" mechanism for compensating personal injury); <u>Bradley v. Ark. Dep't of Educ.</u>, 301 F.3d 952, 957 (8th Cir. 2002) (holding that state officials were entitled to qualified immunity with respect to the plaintiffs' IDEA claims because the plaintiffs could not recover compensatory or punitive damages under the IDEA); <u>Sellers v. Sch. Bd. of Manassas</u>, 141 F.3d 524, 532 (4th Cir. 1998) (rejecting attempt to recover compensatory and punitive damages in IDEA action); <u>Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.</u>, 98 F.3d 989, 991 (7th Cir. 1996) (concluding that the IDEA "with its elaborate provision for educational services and payments to those who deliver them--is inconsistent with monetary awards to children and parents"); <u>but</u>

16

see Salley v. St. Tammany Parsh Sch. Bd., 57 F.3d 458, 466 (5th
Cir. 1995) (affirming nominal damages award under the IDEA
without further discussion).

A few district courts within the Third Circuit have also
concluded that monetary damages do not constitute "appropriate
relief" under the IDEA.  See e.g., Brandon V. v. Chichester Sch.
Dist., No. 06-4687, 2007 U.S. Dist. LEXIS 53852, at *8 (E.D. Pa.
July 25, 2007) (holding that "compensatory damages are generally
inconsistent with the purpose and statutory scheme of the IDEA,
and until the Third Circuit holds otherwise, we will not
recognize damages as an available form of relief in IDEA
actions"); J.M. v. E. Greenwich Twp. Bd. of Educ., No. 07-2861,
2008 U.S. Dist. LEXIS 23463, at *16-*17 (D.N.J. March 25, 2008)
(citing Brandon V.); A.H. v. N.J. Dep't of Educ., No. 05-3307,
2006 U.S. Dist. LEXIS 84134, at *16 (D.N.J. Nov. 20, 2006)
(determining that "a plaintiff cannot demand relief not available
under the IDEA, i.e. monetary damages, where the typical relief
under the IDEA would adequately remedy the situation, in an
effort to avoid exhaustion").  This Court agrees with the
reasoning employed by these district courts and the majority of
circuits to consider this issue.  Accordingly, we find that
because monetary damages are "fundamentally inconsistent" with
the goals of the IDEA, they are not an "available" remedy under
the IDEA.  See Polera, 288 F.3d at 486 (noting that a damages

17

remedy (1) is fundamentally inconsistent with the goals of the IDEA, and (2) "would undercut the IDEA's carefully structured procedure for administrative remedies, a mechanism that encourages parents to seek relief at the time that a deficiency occurs and that allows the educational system to bring its expertise to bear in correcting its own mistakes").  Therefore, because Plaintiffs are only seeking compensatory and consequential damages in connection with their IDEA claim against the District, the Court concludes that dismissal of such claim is appropriate.[3]

## B.   Rehabilitation Act Claim

Plaintiffs assert that D.G. is an individual with a disability under Section 504 of the Rehabilitation Act, who was qualified for educational programs provided by the District. (Compl., at ¶ 86.)  Plaintiffs further assert that D.G. "was excluded from participation in, denied the benefits of, and subjected to discrimination at defendant District's schools." (Id. at ¶ 88.)  Plaintiffs note that the District receives federal funds. (Id. at ¶ 87.)  Thus, Plaintiffs contend that the

---

[3] The Moving Defendants argue that Plaintiffs' IDEA claim should be dismissed for failure to exhaust administrative remedies.  (See Moving Defs. Br., at 6-8 (arguing that the complaint should be dismissed in its entirety because the Plaintiffs failed to exhaust their administrative remedies as required by the IDEA).)  However, because we have determined that the relief Plaintiffs seek is not available under the IDEA, they were not required to exhaust the administrative remedies available under that statute.

18

District's refusal to accommodate D.G. by, inter alia, modifying

its attendance policy, constituted disability discrimination

under Section 504 of the Rehabilitation Act.  (Id. at ¶ 93.)[4]

Section 504 of the Rehabilitation Act provides that:

> [n]o otherwise qualified individual with a disability
> in the United States . . . shall, solely by reason of
> her or his disability, be excluded from the
> participation in, be denied the benefits of, or be
> subjected to discrimination under any program or
> activity receiving Federal financial assistance or
> under any program or activity conducted by any
> Executive agency[.]

29 U.S.C. § 794(a).  A student or former student can state a

claim under Section 504 by showing that (1) he or she is

"disabled" under the act, (2) he or she is "otherwise qualified"

to participate in school activities, (3) the defendant receives

---

[4] As with the IDEA claim, the Moving Defendants argue that
the Rehabilitation Act claim and NJLAD claim, which will be
discussed in more detail below, should be dismissed because
Plaintiffs failed to commence this action within the applicable
statute of limitations period.  The Rehabilitation Act and the
NJLAD are governed by the two-year statute of limitations
generally applicable to personal injury actions.  Hall v. St.
Joseph's Hosp., 777 A.2d 1002, 1009 (N.J. App. Div. 2001); see
DiFrancesco v. Aramark Corp., 169 Fed.Appx. 127, 129 (3d Cir.
2006) (noting that the parties did not dispute that the
plaintiff's Rehabilitation Act claim borrowed Pennsylvania's two-
year personal injury statute of limitations); Hanani v. N.J.
Dep't of Envtl. Prot., 205 Fed.Appx. 71, 76 (3d Cir. 2006)
(stating that personal injury claims based upon discrimination
that are brought under NJLAD are subject to the two-year statute
of limitations set forth in N.J.S.A. § 2A:14-2).  As noted in
footnote 3, supra, the continuing violations doctrine applies
here.  Therefore, because the conduct forming the basis of the
Rehabilitation Act claim and NJLAD claim constituted a continuing
practice that did not cease until D.G. left Bernards High School
in 2006, and this action was commenced on September 25, 2007,
Plaintiffs brought these claims within the applicable two-year
statute of limitations period.

federal financial assistance, and (4) he or she "was excluded from participation in, denied the benefits of, or subject to discrimination at, the school."  <u>Andrew M. v. Del. County Office of Mental Health & Mental Retardation</u>, 490 F.3d 337, 350 (3d Cir. 2007); <u>E. Greenwich Twp. Bd. of Educ.</u>, 2008 U.S. Dist. LEXIS 23463, at *17; <u>Tereance D. v. Sch. Dist. of Phila.</u>, No. 07-4166, 2008 U.S. Dist. LEXIS 10929, at *13 (E.D. Pa. Feb. 13, 2008).[5] The Rehabilitation Act defines an "individual with a disability" as, <u>inter alia</u>, any person who "has a physical or mental impairment which substantially limits one or more of such person's major life activities".  29 U.S.C. § 705(20)(B).  In

---

[5]  The Court notes that the Rehabilitation Act does not require a plaintiff to exhaust any administrative remedies before commencing an action alleging that a federal or private entity receiving federal funding discriminated against the plaintiff on the basis of a disability in violation of Section 504.  <u>Burkhart v. Widener Univ., Inc.</u>, 70 Fed.Appx. 52 (3d Cir. 2003); <u>see</u> <u>Freed v. Consol. Rail Corp.</u>, 201 F.3d 188, 194 (3d Cir. 2000) ("we affirm our long-standing position that section 504 plaintiffs may proceed directly to court without pursuing administrative remedies").  The Court further notes that, in connection with the Rehabilitation Act claim, Plaintiffs seek compensatory and consequential damages, attorneys fees and costs, and such other relief as the Court deems just and proper.  (Compl., at Wherefore Cl. following ¶ 93.)  <u>See</u> <u>A.W.</u>, 486 F.3d at 804 (stating that compensatory damages are available under the Rehabilitation Act). Because monetary damages are not "relief that is also available under" the IDEA, Plaintiffs were not required to exhaust all administrative procedures available under the IDEA before asserting their Rehabilitation Act claim.  <u>See</u> 20 U.S.C. § 1415(l) (stating that before filing a civil action under, among other laws, the Rehabilitation Act, "seeking relief that is also available under" the IDEA, the administrative procedures under 20 U.S.C. §§ 1415(f) and (g) "shall be exhausted to the same extent as would be required had the action been brought under" the IDEA).

establishing a Rehabilitation Act claim, a plaintiff must demonstrate that the defendants knew or should have known about the disability, but the plaintiff need not demonstrate that the defendants' discrimination was intentional.  Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 253 (3d Cir. 1999); Tereance D., 2008 U.S. Dist. LEXIS 10929, at *13-*14.

A plaintiff may use the same conduct as the basis for both an IDEA claim and a Rehabilitation Act claim.  Andrew M., 490 F.3d at 349; see Ridgewood Bd. of Educ., 172 F.3d at 253 (stating that there are few differences between the IDEA's affirmative duty and Section 504's negative prohibition against discrimination on the basis of disability).  In fact, Section 504 "imposes a 'childfind' duty, or the duty to identify a disabled child 'within a reasonable time after school officials are on notice of behavior that is likely to indicate a disability.'"  Ridgewood Bd. of Educ., 172 F.3d at 253 (quoting Matula, 67 F.3d at 500-01).  However, a violation of the IDEA is not per se a violation of the Rehabilitation Act; the plaintiff must always demonstrate all elements of a Rehabilitation Act claim.  Andrew M., 490 F.3d at 349.  The plaintiff cannot establish a Rehabilitation Act claim simply by demonstrating a disability and denial of some service.  Id. at 350.  Instead, the plaintiff must show that the service was not provided solely because the plaintiff is disabled.  Id.

21

Charwin, Connor, Dundas, Grund, and Miller, who are the individual Moving Defendants, do not receive federal financial assistance.  Accordingly, they are not subject to Section 504 of the Rehabilitation Act.  See A.W., 486 F.3d at 804 ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals."); Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002) (stating that because the individual defendants did not receive federal aid, the plaintiff could not state a claim against them under Section 504 of the Rehabilitation Act); see Millington v. Temple Univ. Sch. of Dentistry, No. 06-4796, 2008 U.S. App. LEXIS 1291, at *7 n.3 (3d Cir. Jan. 23, 2008) (noting that the plaintiff must show that the defendant received financial assistance to establish a claim under the Rehabilitation Act); E. Greenwich Twp. Bd. of Educ., 2008 U.S. Dist. LEXIS 23463, at *19 (concluding that Rehabilitation Act claims could not be maintained against the teacher and administrator defendants).  (See Compl., at ¶ 87 (alleging only that the District receives federal funds).) However, the Court concludes, after accepting the factual allegations in the complaint as true and drawing all reasonable inferences in favor of Plaintiffs, that Plaintiffs have sufficiently alleged that the District violated Section 504 of the Rehabilitation Act.  See Chubb Corp., 394 F.3d at 134.

22

Plaintiffs assert that D.G. is an individual with a disability under Section 504.  (Compl., at ¶ 86.)  Specifically, Plaintiffs allege that at all times relevant to the complaint, D.G. suffered from severe depression, which substantially limited his major life activities.  See 29 U.S.C. § 705(20)(B).  (See generally, Compl., at ¶¶ 23-81.)  Plaintiffs note that certain employees of the District schools D.G. attended were aware of D.G.'s disability due to his behavioral problems in school, his threats of suicide made to District personnel, and C.G. directly informing District personnel about D.G.'s increased depression, hospitalizations, and her concerns for his well-being and academic progress.  (See Compl., at ¶¶ 23-24, 28, 35, 37, 39, 42, 46-47, 53, 57, 60-64, 66.)  See Ridgewood Bd. of Educ., 172 F.3d at 253; Tereance D., 2008 U.S. Dist. LEXIS 10929, at *13-*14.  Second, Plaintiffs allege, and the Moving Defendants have not disputed, that D.G. was otherwise qualified for educational programs provided by the District.  (Compl., at ¶ 86.)[6]  Plaintiffs further allege that the District receives federal funds.  (Id. at ¶ 87.)

---

[6] The Moving Defendants did not address the merits of Plaintiffs' Rehabilitation Act claim in their brief in support of the motion to dismiss.  (See generally, Moving Defs. Br.)  Also, the Moving Defendants did not file any reply to Plaintiffs' brief in opposition to the motion, despite seeking an extension of time in which to file a reply brief.  (See dkt. entry no. 14, 11-28-07 Barone Letter.)

With respect to the fourth Section 504 element, Plaintiffs contend that (1) D.G. was excluded from participation in, denied benefits of, and subjected to discrimination at, the District's schools, (2) "[a]lthough aware that D.G. suffered from significant depression and was having difficulties in school, including being unable to attend classes on a consistent basis, Defendant District did not offer to evaluate D.G. for eligibility for accommodations or services under Section 504", (3) the District did not advise Plaintiffs that D.G. might be eligible for accommodations and services under Section 504, or that they were entitled to a hearing regarding D.G.'s entitlement to an evaluation and accommodations, and (4) the District's failure to accommodate D.G. constituted discrimination under Section 504. (Id. at ¶¶ 88, 90, 91-93.)   The Court notes that Section 504 imposes a duty on the District to identify a disabled child within a reasonable time after school officials are on notice of behavior indicating that the child has a disability.  Ridgewood Bd. of Educ., 172 F.3d at 253.

Against this backdrop, we find that Plaintiffs have sufficiently alleged that the District excluded D.G. from participation in, and denied him the benefits of the programs and services offered by its schools.  See Tereance D., 2008 U.S. Dist. LEXIS 10929, at *14-*15 (concluding that the plaintiffs established the fourth element of their Section 504 claim by

24

alleging in the complaint that, <u>inter</u> <u>alia</u>, the defendant
district (1) failed to provide the student plaintiff with a free
appropriate public education, (2) failed to provide services to
address the student's disability, (3) did not conduct required
evaluations of the student, and (4) told the student's mother to
get him a private psychiatric evaluation that the school should
have performed).  Therefore, the Court finds that Plaintiffs have
stated a claim against the District for violations of Section 504
of the Rehabilitation Act.  The Court will thus (1) grant the
Moving Defendants' motion with respect to Plaintiffs'
Rehabilitation Act claim insofar as asserted against Charwin,
Connor, Dundas, Grund, and Miller, and (2) deny the motion with
respect to Plaintiffs' Rehabilitation Act claim insofar as
asserted against the District.

**C.   Section 1983 and Fourteenth Amendment Claim**

Plaintiffs assert that Caravello, Charwin, Connor, Dundas,
Grund, Miller, and Palazzi (1) failed to inform them of their
right to obtain an evaluation of and receive appropriate services
for D.G., (2) failed to have D.G. evaluated, (3) did not hold a
meeting to determine whether D.G. should be evaluated, and (4)
intentionally ignored information indicating that D.G. suffered
from depression, and thus, needed an evaluation.  (Compl., at ¶
95.)  Plaintiffs further assert that the District

> has a practice and/or policy of not complying with its
> procedural obligations with respect to identifying and

25

> evaluating students like D.G. including not convening a
> meeting with the parents to decide whether to conduct
> an evaluation, not providing written notice to the
> parents and not notifying parents of their right to
> seek a hearing.

(Id. at ¶ 96.)  Thus, Plaintiffs contend that the defendants

violated their rights to procedural due process under the

Fourteenth Amendment and Section 1983.  (Id. at 97.)

A plaintiff asserting civil rights violations under Section

1983 must establish that the defendant acted under color of state

law to deprive the plaintiff of a right secured by the United

States Constitution or the laws of the United States.  Groman v.

Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983

does not create substantive rights, but instead provides a remedy

for the violation of rights created by other federal laws.  Id.;

Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (noting that

Section 1983 does not, by itself, create rights, but instead

provides remedies for deprivation of rights established by the

Constitution or other federal laws).  "The color of state law

element is a threshold issue; there is no liability under

[Section] 1983 for those not acting under color of law."  Groman,

47 F.3d at 638.  Here, the Moving Defendants, the District,

certain members of the Bernards High School staff, and the

Superintendent of Bernards High School, were clearly acting under

color of state law at all times relevant to the complaint.  Once

it has been established that the defendants acted under color of

26

state law, the Court must identify the federal right the
defendants allegedly violated.  See Groman, 47 F.3d at 633.  As
noted above, Plaintiffs allege that the Moving Defendants, as
well as Caravello and Palazzi, violated their right to procedural
due process under the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment provides,
"nor shall any State deprive any person of life, liberty, or
property, without due process of law."  U.S. Const. amend. XIV.
The Due Process Clause protects individuals against two types of
government action.

> So-called "substantive due process" prevents the
> government from engaging in conduct that "shocks the
> conscience," or interferes with rights "implicit in the
> concept of ordered liberty".  When government action
> depriving a person of life, liberty, or property
> survives substantive due process scrutiny, it must
> still be implemented in a fair manner.  This
> requirement has traditionally been referred to as
> procedural due process.

United States v. Salerno, 481 U.S. 739, 746 (1987) (internal
cites omitted) (discussing Fifth Amendment's due process clause,
which contains identical language).  To state a procedural due
process claim under Section 1983, the plaintiff must allege that
(1) he or she was deprived of an interest encompassed within the
Fourteenth Amendment's protection of life, liberty, and property,
and (2) the procedures available to the plaintiff did not provide
due process of law.  Hill v. Bor. of Kutztown, 455 F.3d 225, 234-
35 (3d Cir. 2006); Solomon v. Phila. Hous. Auth., 143 Fed.Appx.

447, 452 (3d Cir. 2005).  "In order to state a claim for failure to provide sufficient procedural due process, a plaintiff must have taken advantage of the processes that are available to her, unless those processes are unavailable or patently inadequate." Solomon, 143 Fed.Appx. at 453; Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).  In other words, if there is a process "on the books" that may provide due process, "the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."  Alvin, 227 F.3d at 116.

Liberty interests protected by the Due Process Clause are created and defined by existing rules stemming from state laws or rules, or "understandings that secure certain benefits and that support claims of entitlement to those benefits."  Goodmann v. Hasbrouck Heights Sch. Dist., No. 04-5861, 2007 U.S. Dist. LEXIS 45684, at *14-*15 (D.N.J. June 25, 2007); see Muhammad v. Fauver, No. 79-3121, 1989 U.S. Dist. LEXIS 7324, at *43 (D.N.J. July 28, 1989) (stating that liberty interests protected by the Due Process Clause may arise under the clause itself, a state statute, or a regulation).  The Court, if concluding that the plaintiff was deprived of a liberty or property interest, must determine what process is necessary.  Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982).  Procedural due process is a flexible requirement and "calls for such procedural protections

as the particular situation demands."  Mathews v. Eldridge, 424
U.S. 319, 334 (1976).

> The Supreme Court has noted that a state:
>
> is constrained to recognize a student's legitimate
> entitlement to a public education as a property
> interest which is protected by the Due Process Clause
> and which may not be taken away for misconduct without
> adherence to the minimum procedures required by that
> Clause.

Goss v. Lopez, 419 U.S. 565, 574 (1975).  However, Plaintiffs do
not assert that D.G. was deprived of a public education.
Instead, they essentially assert that the individual Moving
Defendants, Charwin, Connor, Dundas, Grund, and Miller, as well
as the non-moving defendants, Caravello and Palazzi, deprived
D.G. of his right to be evaluated for possible eligibility for
education services.  (See Compl., at ¶ 95.)  The Court's own
research did not reveal any case law suggesting that the right to
be evaluated for eligibility for education services is a right
encompassed within the Fourteenth Amendment's protection of life,
liberty, and property.  While there is case law discussing the
procedures that must be employed before a student is suspended
from school for more than ten days and thus deprived of access to
public education for an extended period of time, such procedures
are not applicable to a situation where, as here, a student was
not denied access to a public education, but was denied
evaluations to determine whether the student needed educational
accommodations or services.  See, e.g., Williams v. Cambridge Bd.

of Educ., 370 F.3d 630, 651 (6th Cir. 2004).  The Court does not believe that entitlement to evaluations for eligibility for educational accommodation, or entitlement to written notice explaining why such evaluations were denied rise to the level of a "property interests" afforded due process protection.  See generally Goodmann, 2007 U.S. Dist. LEXIS 45684, at *18-*19 (stating that "it is highly doubtful" that entitlement to good-faith employment evaluations rises to the level of a "property interest" protected by due process).  Therefore, the Court finds that Plaintiffs have not alleged a viable procedural due process claim against Charwin, Connor, Dundas, Grund, and Miller, the individual Moving Defendants, because Plaintiffs have not demonstrated that they had any property interest protected by due process.

The Court notes that Plaintiffs' procedural due process claim, insofar as asserted against the individual Moving Defendants, also fails because Plaintiffs did not take advantage of all procedures available while D.G. was a student.  See Solomon, 143 Fed.Appx. at 453 (noting that in order to state a claim for failure to provide sufficient procedural due process, a plaintiff must have taken advantage of the available processes); Alvin, 227 F.3d at 116.  Specifically, educational agencies that receive assistance under the IDEA must maintain procedures to ensure that disabled children and their parents "are guaranteed

procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a). Such safeguards include the ability to present a complaint regarding the evaluation or educational placement of a disabled child. 20 U.S.C. § 1415(b)(6)(A)-(B). When a complaint regarding the evaluation or educational placement of a disabled child is received, the child's parents or the local educational agency is entitled to an impartial due process hearing conducted by either the state or local educational agency. 20 U.S.C. § 1415(f)(1)(A). If the hearing is conducted by a local education agency, any aggrieved party may appeal the findings and decision to the state educational agency. 20 U.S.C. § 1415(g)(1). Further, any party aggrieved by the ultimate findings and decision may commence an action in any state or district court. 20 U.S.C. § 1415(i)(2)(A); see 20 U.S.C. § 1415(f).

Plaintiffs were entitled to present a complaint while D.G. was a student in the District specifically asserting that he was disabled and should be evaluated for educational accommodations and services. If such complaint was not resolved, Plaintiffs were entitled to a due process hearing, and could appeal the results of such hearing or commence an action if dissatisfied with the ultimate results. Plaintiffs did file a due process request with the OAL in July of 2006, but they later withdrew their petition. (See Compl., at ¶¶ 75-55.) Accordingly,

31

Plaintiffs failed to take advantage of the adequate processes that were available to them under the IDEA while D.G. was a student experiencing significant difficulties.  See Solomon, 143 Fed.Appx. at 453; Alvin, 227 F.3d at 116.  Thus, the Court will grant the Moving Defendants' motion with respect to Plaintiffs' Fourteenth Amendment procedural due process claim insofar as such claim is asserted against Charwin, Connor, Dundas, Grund, and Miller, the individual Moving Defendants.

The Court will also grant the Moving Defendants' motion with respect to Plaintiffs' Fourteenth Amendment procedural due process claim insofar as such claim is asserted against the District.  Plaintiffs allege that the District violated its right to procedural due process by employing a practice or policy of failing to comply with its procedural obligations to identify and evaluate students like D.G. "including not convening a meeting with the parents to decide whether to conduct an evaluation, not providing written notice to the parents and not notifying parents of their right to seek a hearing." (Compl., at ¶ 96.)  Thus, Plaintiffs are essentially alleging that the District is liable under Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658 (1978). Monell provides that local government units may be sued directly under Section 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and

promulgated by that body's officers." <u>Monell</u>, 436 U.S. at 690.
However, under <u>Monell</u>, there can be no municipal liability if the
Court determines that none of the individual defendants violated
the plaintiff's constitutional rights.  <u>See</u> <u>Deninno v. Mun. of
Penn Hills</u>, No. 07-1550, 2008 U.S. App. LEXIS 5518, at *12 (3d
Cir. March 14, 2008); <u>see</u> <u>Bornstad v. Honey Brook Twp.</u>, 211
Fed.Appx. 118, 126 (3d Cir. 2007). (concluding that because the
court found that there was no violation of plaintiff's
constitutional rights, there was no basis for imposing municipal
liability).  Thus, because we have determined that Plaintiffs
failed to state a claim for procedural due process violations
against any of the individual Moving Defendants, the Court cannot
impose municipal liability against the District.

    **D.   NJLAD Claim**

    Plaintiffs assert that D.G. is a handicapped person under
NJLAD, who was otherwise qualified for the District's educational
programs.  (Compl., at ¶¶ 100-101.)  Plaintiff further asserts
that the District deprived D.G. of his rights under NJLAD by
"failing to make accommodations for D.G., including
individualized educational services appropriate to meet his needs
and modifying its attendance policy".  (<u>Id.</u> at ¶ 102.)

    NJLAD provides in relevant part that "[a]ll persons shall
have the opportunity . . . to obtain all the accommodations,
advantages, facilities, and privileges of any place of public

33

accommodation" without discrimination on the basis of disability. N.J.S.A. § 10:5-4.  A "place of public accommodation" includes any kindergarten, primary, or secondary school.  N.J.S.A. § 10:5-5(l).  Further, "disability" is defined as, <u>inter alia</u>, "any mental, psychological or developmental disability resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically".  N.J.S.A. § 10:5-5(q).  All of the provisions of NJLAD must be construed "to prohibit any unlawful discrimination against any person because such person is or has been at any time disabled".  N.J.S.A. § 10:5-4.1.

The New Jersey Administrative Code contains provisions implementing the NJLAD "as it pertains to owners, lessees, proprietors, managers, superintendents, agents or employees of any place of public accommodation."  N.J.A.C. § 13:13-4.1.  Under these provisions, it is unlawful for any of the above-listed persons or entities to (1) deny an individual access to the accommodations, advantages, facilities, or privileges of a place of public accommodation "on account of that person's disability or perceived disability", or (2) discriminate against a person with a disability with respect to eligibility criteria, methods of administration, standards, terms, or conditions for access to accommodations, advantages, facilities or privileges of a place

34

of public accommodation.  N.J.A.C. § 13:13-4.  Moreover,

the provisions state that:

> [a]n owner, lessee, proprietor, manager,
> superintendent, agent or employee of any place of
> public accommodation [must] make reasonable
> accommodations to the limitations of a patron or
> prospective patron who is a person with a disability,
> including making such reasonable modifications in
> policies, practices, or procedures, as may be required
> to afford goods, services, facilities, privileges,
> advantages, or accommodations to a person with a
> disability, unless [such person or entity] demonstrates
> that making the accommodations would impose an undue
> burden on its operation.

N.J.A.C. § 13.13-4.11(a).  In determining whether an

accommodation is unreasonable, the Court should consider, inter

alia, (1) the size of the business running the place of public

accommodation, (2) the nature and cost of the accommodation

sought, (3) whether the accommodation sought will fundamentally

alter the services, programs, or accommodations offered, and (4)

whether the accommodation sought will destroy a building of

historical significance.  N.J.A.C. § 13.13-4.11(b).

The District encompasses the primary and secondary schools

in Somerset Hills, including the schools D.G. attended, which

constitute places of public accommodation.  See N.J.S.A. § 10:5-

5(l).  Also, Plaintiffs have sufficiently alleged that D.G. was

disabled at all times relevant to the complaint as that term is

defined in NJLAD.  (See generally Compl. (alleging that D.G.

suffers from the psychological condition of major depression).)

See N.J.S.A. § 10:5-5(q).  Thus, D.G. was entitled to obtain all the accommodations, advantages, facilities, and privileges available at his primary and secondary schools without discrimination on the basis of his depression problems.  See N.J.S.A. § 10:5-4.

NJLAD relies on the same analytical framework as the Americans with Disabilities Act.  McNemar v. Disney Store, Inc., 91 F.3d 610, 618 (3d Cir. 1996) (employing ADA burden-shifting framework to NJLAD claim); Nusbaum v. CB Richard Ellis, Inc., 171 F.Supp.2d 377, 387 (D.N.J. 2001).  To make out a prima facie case of disability discrimination under the ADA, a plaintiff usually must establish that he or she (1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse action because of that disability.  Turner v. Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006) (describing prima facie case under ADA in employment discrimination context); Nusbaum, 171 F.Supp.2d at 387 (same).  However, a plaintiff may also state a claim for violation of the ADA by showing that he or she (1) has a disability, (2) is otherwise qualified to participate in a program, and (3) was denied the benefits of the program or discriminated against because of the disability.  see Millington v. Temple Univ. Sch. of Dentistry, No. 06-4796, 2008 U.S. App. LEXIS 1291, at *7 (3d Cir. Jan. 23, 2008); Iseley v. Beard, 200 Fed.Appx. 137, 142 (3d Cir. 2006).

Applying this analytical framework here, the Court finds that Plaintiffs have sufficiently alleged their NJLAD claim against the District.  The Court has already stated that D.G. has a disability under NJLAD.  Further, Plaintiffs assert that D.G. was "otherwise qualified for the educational programs provided by the defendant District", and he was denied the benefits of such programs when the District failed to accommodate him by providing individualized educational services and modifying its attendance policies.  (Compl., at ¶¶ 101-02.)  The accommodations suggested by Plaintiffs, such as modifying the District's school attendance policies, may have been reasonable.  See N.J.A.C. § 13.13-4.11(b); see also N.J.A.C. § 13.13-4.11(a) (nothing that an employee of a place of public accommodation should accommodate a disabled person if such accommodations would not impose an undue burden).  The Moving Defendants do not address the substantive aspects of the NJLAD claim in their brief in support of the motion to dismiss.  Thus, the Court will draw all reasonable inferences in favor of Plaintiffs and infer that the District denied D.G. the benefits of its program and services because of his disability.  The Court acknowledges that in ruling on a motion to dismiss it "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 127 S.Ct. at 1969 n.8.  However, the Court notes that Plaintiffs will ultimately need to establish

37

that the District impeded D.G.'s participation in educational
services "because of his disability".  Accordingly, we will deny
the Moving Defendants' motion with respect to the NJLAD claim
against the District.[7]

_____

[7] NJLAD does not require a plaintiff to exhaust any
administrative remedies before commencing an action.  Mitchell v.
Western Union, No. 06-949, 2007 U.S. Dist. LEXIS 92621, at *12
n.6 (D.N.J. Dec. 18, 2007).  The Court also notes that the IDEA's
exhaustion requirement does not apply to state laws such as
NJLAD.  See 20 U.S.C. § 1415(l) (stating that before filing a
civil action under federal laws affecting the rights of disabled
children "seeking relief that is also available under" the IDEA,
the administrative procedures under 20 U.S.C. §§ 1415(f) and (g)
must  be exhausted to the same extent as would be required had
the action been brought under the IDEA).  Further, in connection
with the NJLAD claim, Plaintiffs seek compensatory and
consequential damages, attorneys fees and costs, and such other
relief as the Court deems just and proper.  (Compl., at Wherefore
Cl. following ¶ 102.)  See J.M., 2008 U.S. Dist. LEXIS, at *23
(explaining that compensatory and punitive damages are available
under NJLAD).  Thus, Plaintiffs do not seek relief that is even
available under the IDEA.  See 20 U.S.C. § 1415(l).

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will (1) grant the motion with respect to Plaintiffs' (a) IDEA claim and Fourteenth Amendment claim (count 1 and count 3) insofar as such claims are asserted against the Moving Defendants and (b) Rehabilitation Act claim (count 2) insofar as such claim is asserted against Charwin, Connor, Dundas, Grund, and Miller, the individual Moving Defendants, and (2) deny the motion with respect to Plaintiffs' (a) Rehabilitation Act claim (count 2) insofar as such claim is asserted against the District and (b) NJLAD claim (count 4) insofar as such claim is asserted against the Moving Defendants. The Court will issue an appropriate order separately.[8]

<u>  s/ Mary L. Cooper  </u>
**MARY L. COOPER**
United States District Judge


Dated: <u>April 18, 2008</u>

---

[8] The Court will dismiss, <u>sua</u> <u>sponte</u>, the Rehabilitation Act claim (count 2) and the Section 1983 and Fourteenth Amendment claim (count 3) insofar as asserted against Caravello and Palazzi on the same grounds as those articulated with respect to the individual Moving Defendants, as Plaintiffs had notice of all of the issues that the Court would reach and had the opportunity to fully address them. <u>See</u> <u>Couden v. Duffy</u>, 446 F.3d 483, 500 (3d Cir. 2006); <u>Tredennick v. Bone</u>, No. 07-0735, 2007 U.S. Dist. LEXIS 87941, at *16-*17 n.3 (W.D. Pa. Nov. 29, 2007).